IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUAN J. GUTIERREZ,

        Plaintiff,

v.                                                     CIV 04-0940 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

      Plaintiff Juan Gutierrez alleges that he became disabled as of June 1, 1994, yet he was serving as an elected County Commissioner at that time. He continued to do so through 2000, earning $10,000 per year with the exception of 1994, when he earned $8,214.62. The Appeals Council remanded for, among other things, a determination of whether his work as a county commissioner constituted "substantial gainful activity." Administrative Law Judge ("ALJ") Carol A. Connor issued a partially favorable decision. The ALJ found that Gutierrez's service as a county commissioner until January 1, 2001 indicated that Plaintiff was substantially and gainfully employed, and therefore denied benefits prior to that date. *See, e.g., Administrative Record* at 17-22.

      This matter is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing, where he asserts that the ALJ's decision concerning employment did not apply the correct legal standard and is not supported by substantial evidence. *See Docs. 13, 14.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as

the presiding judge and enter final judgment. *See Docs. 2, 4.* If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).

The relevant portions of the record have been read and carefully considered as have the parties' arguments and the applicable law. I find that Plaintiff's motion should be denied and the decision of the Commissioner affirmed for the reasons stated by the Commissioner in her response, which I incorporate herein by reference. To that reasoning, I add these observations.

Among other things, "disability" is defined as the "inability to do any substantial gainful activity." *See* 20 C.F.R. § 404.1505(a). Thus, the first step of the sequential evaluation is whether the "claimant is doing substantial gainful activity." *Id.,* § 404.1520(a)(4)(i). At Step 1, the claimant bears the "burden of showing that his disability prevented him from performing any substantial gainful activity." *Fowler v. Bowen,* 876 F.2d 1451, 1455 (10th Cir. 1989).

The regulations define "gainful work activity" as something done "for pay or profit" and "substantial work activity" as something involving "significant physical or mental activities . . . even if it is done on a part time basis, or if you do less, get paid less, or have less responsibility than when you worked before." *Id.,* § 404.1572(a), (b). If a claimant is employed, the Administration considers the employee's earnings in determining whether the work is substantial and gainful.

> Generally, in evaluating your work activity for substantial gainful activity purposes, ***our primary consideration*** will be the earnings you derive from the work activity. ***We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings.*** The amount of your earnings from work you have done (regardless of whether it is unsheltered or sheltered[1] work) may show that you have engaged in substantial gainful activity. Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity.

*Id.,* § 404.1574(a)(1) (emphasis added).

Thus, "earnings" as defined by the regulations is key to the inquiry.[2] The Administration does not consider "income that is not directly related to your productivity" or income that constitutes a "subsidy." *Id.,* § 404.1574(a)(2).[3] Plaintiff does not dispute that the amount of his

---

[1] "Sheltered employment is employment provided for handicapped individuals in a protected environment under an institutional program." *Soc. Sec. Ruling 83-33,* 1983 WL 31255 at *7.

[2]  Originally, the determination as to whether a person engaged in SGA was based on criteria as to the energies, responsibilities, skills, hours, earnings, regularity and related factors pertaining to the work performed. Later it was found that this method was not satisfactory because it frequently resulted in inconsistent decisions. It was decided that earnings provided an objective and feasible measurement of work. Therefore, an earnings test was established and it has been the primary SGA guide since 1958.

*Id.* at * 1.

[3] For example, Ruling 83-33 recognizes that an "employer may, because of a benevolent attitude toward a handicapped individual, subsidize the employee's earnings by paying more in wages than the reasonable value of the actual services performed," *id.* at *2, and lists a number of factors to consider in determining whether earnings are subsidized including and apparent "marked discrepancy between the amount of pay and the value of the services," or "the employee receives unusual help from others in doing the work," *id.* at *3. The regulations provide that when "earnings exceed the reasonable value of the work you perform, we consider only that part of your pay which you actually earn" and that "[w]e consider your work to be subsidized if the true value of your work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to you for your work." 20 C.F.R. § 404.1574(a)(2).

3

earnings as a county commissioner exceed the threshold for which the regulations create a presumption that such work constituted "substantial gainful activity." This presumption may be rebutted, however, by additional evidence of the employee's particular circumstances. Relevant factors to rebut the presumption are similar to those the Administration uses to determine whether wages are truly earned or subsidized. *See supra,* note 3. They include: the nature of the work, how well and independently an employee is able to perform the work, and whether any special accommodations are required for the employee to perform the work given his or her impairment. *See id.,* §§ 404.1573(a)-(c).

An unpublished 10th Circuit opinion reiterates the earnings presumption and factors that can rebut it.

> Where there is no evidence other than the amounts earned over a specific period, the determination of substantial gainful activity may be made solely on the basis of the regulatory earnings standards. . . . But, where other evidence is offered, the presumption established by the regulations is rebuttable. This is clear from the titles to the earnings guidelines, . . . as well as from case law . . . .
>
> Factors relevant in rebutting the presumption of substantial gainful activity based on earnings alone include whether the claimant experienced significant absenteeism and rendered substandard job performance but was paid the same regardless of how much work he missed or accomplished, . . . whether the claimant required help from co-workers to accomplish his work, . . . whether the claimant could work for only brief periods of time, . . . and whether he needed special accommodation from the employer . . . .

*Franco,* 1996 WL 559641 at **1-2 (citations omitted).

In the matter before me, a 2002 letter from the former County Manager explained that Plaintiff's

> status was that of an elected position being that of a County

4

> Commissioner. . . .  The duties that were required of this position were policy making and the overseeing of the Administrative Branch of Socorro County, New Mexico Government.  The position required the attendance of two scheduled regular meetings, any special or emergency meetings as needed, occasionally attended meetings, conferences and workshops of which appointment were made to and listening to constituents of Socorro County, New Mexico concerns of needs and requests.  The position had no physical work associated and required on an average of fifteen hours per month.

*Record* at 156.

In his application, Plaintiff remarked that "in 1991 due to my poor health [I] became the County Commissioner for Socorro County since it required only a few hours per week work and no physical activity.  My only duties involved a meeting each week for about 2 to 3 hours and signed checks and documents occasionally."  *Id.* at 95.

At the hearing, in response to ALJ Connor's questions Plaintiff explained his job as Commissioner as follows:

> Q: . . . What did you do when you were County Commissioner?
> A: Oh not much, attend meetings twice a month.  An hour and a half, two hours maybe.  We had a County Commissioner and they'd take care of just about everything.  The County Manager usually does everything.
> Q: Did you run for that office?
> A: Yes, ma'am.
> Q: How long did you serve.
> A: Ten years, as County Commissioner.  They change the [l]aw when I ran.  I[t] used to be two, two year terms.  And I ran in '90, then they changed it to four and I ran.  I represented about 1,600, 1,700 voters in my district.
> Q: . . . And did you work for County Government from '90 to December 31 of 2000?
> A: Yes, ma'am.  That's when I was the County Commissioner.
> Q: . . . What kind of money did you earn annually?
> A: At the end it was around, close to $10,000, I'd say $10,000.
> Q: Okay. And what did they pay you an hourly?

5

> A: No, the wages are set by the Legislature, they –
> Q: So just so much for meetings, so much or what, just a flat $10,000?
> A: Flat, yes, ma'am.
> Q: Whether you worked –
> A: Or not.
> Q: – or not, okay.
> A: Yeah, those wages are set by the Legislature. . . .

*Id.* at 505-06.

In response to questions by his attorney, Plaintiff explained:

> Q: And you mentioned the County Commissioner work, two meetings a month, an hour or two. What other things would you have to do as County Commissioner? Would you go into the office regularly and meet with constituents, and do paperwork, and –
> A: Hardly ever, with the constituents I'd used to go and visit the County Manager and see how things were going and stuff like that, or the Road Superintendent. You know stay 15 minutes, or get a phone [c]all or stuff like that, but it's not much of a hassle. Especially in my area where I lived, the people aren't, they don't bother you hardly at all.
> Q: A pretty rural area?
> A: Yeah.
> Q: I think you told me you know most of your constituents.
> A: Oh yeah, I knew everybody.

*Id.* at 511-12.

There is no question that Plaintiff's monthly average earnings from his job as Commissioner well exceed the amounts that "ordinarily show . . . you have engaged in substantial gainful activity." *Id.,* § 404.1574(b)(2) (and Table 1 therein listing $500 and $700, respectively, for the years in question here); *see also Record* at 18, 110, 506 (these annual salary figures divided by twelve exceeded the monthly limits for each year in question). Likewise, there is no assertion or question that this elected position was not a "sheltered or special environment." *See Doc. 14.* Moreover, Plaintiff does not take issue with the substance of ALJ Connors' finding that

"[t]here is no evidence that any special accommodations were made [to the County Commissioner position] because of the claimant's condition." *Record* at 18; *see also Doc. 14.*

Instead, Plaintiff's memorandum in support argues that because there is substantial medical evidence of disabling conditions during this period, the evidence rebuts the presumption and that the ALJ's decision impermissibly rests solely on his earnings and lack of any special accommodations. *See Doc. 14* at 4-7. However, the fact that Plaintiff may have had a disabling condition is beside the point, because "[i]f plaintiff actually engaged in substantial gainful activity, he could not be found disabled, **regardless of the severity of his impairments.**" *Fowler,* 876 F.2d at 1453 (emphasis added).

Plaintiff also asserts that the Commissioner work was not "substantial" because it did not involve any time or effort of any significance. *See Doc. 14* at 5. However, the fact that the job involved little time commitment is immaterial since "substantial work activity" encompasses an activity "even if it is done on a part time basis." 20 C.F.R. § 404.1572(a), (b). Likewise, the County Commissioner position qualifies as substantial work activity even though Plaintiff did less, got paid less, and had less responsibility than with his prior work as the owner of a bar. *Id.,* § 404.1572(a).

That the job was easy for Plaintiff to perform does not constitute substantial evidence that the job of County Commissioner is "insubstantial." That work does "contribute substantially to the operation of" state governance, and it required Plaintiff to use his "experience, skills, supervision and responsibilities" in carrying out his job. *Id.,* § 404.1573(a). Indeed, those

7

nonphysical activities are "pivotal" to the job.[4]

Conversely, I cannot conclude that the "minimal duties" Plaintiff performed, which made "little or no demands on" him, were as he characterizes "of little or no use to" his employer, the State of New Mexico.  In his Reply, Plaintiff appears to take the position that the Commissioner salary is a "subsidy" because it pays well for little work as compared to jobs in the private industry.  *See Doc. 16.*  However, because the New Mexico Legislature sets the salary and pays all Commissioners the same rate, regardless of whether they had "no work" to perform.  Though the pay appears to be quite good, it does not constitute a subsidy as contemplated by the regulations or ruling.  *See, e.g., supra,* note 3.

Finally, Plaintiff points to no evidence that the County Commissioner job was restructured to accommodate his impairments, that he earned less at the job than other Commissioners because of his impairments, that he required help to complete his tasks, or any other such factors relevant and necessary to rebut the presumption.  Instead, the job itself was well-suited for Plaintiff's physical limitations, which, by his own admission, is the very reason why he sought out the position.

Wherefore,

---

[4] *See Rupe,* 1996 WL 131665 at *2 (owner of food concession trailer spent at most two hours a day researching events, deciding which ones to apply for, making necessary phone calls, and obtaining proper permits:  "Mr. Rupe's mental activities are pivotal to the business; the amount of time he spends on these activities does not alter this conclusion," citing *Dolbashian v. Secretary of Health & Human Servs.,* 688 F.2d 4, 5-6 (1st Cir. 1982) for proposition that a "claimant's contribution to the business vital even though he spent only one hour a day on business activities").

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 13)* is DENIED, and the decision of the Commissioner is affirmed. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.